JUSTICE WARNER
delivered the Opinion of the Court.
¶1 Chris Jones and Tei Nash (Plaintiffs) appeal from an Order entered on May 24, 2004, in the Fourth Judicial District Court, Missoula County, granting summary judgment in favor of Defendants (collectively, “Missoula County”) and dismissing Plaintiffs’ complaint. *207 We affirm.
¶2 We restate the issues on appeal as follows:
¶3 1. Is extending dependent health care benefits to domestic partners of county employees an issue of significant public interest under § 2-3-103(1), MCA?
¶4 2. Did Missoula County provide sufficient notice of its decision to extend dependent health care benefits to domestic partners of county employees to satisfy the requirements of § 2-3-103(1), MCA?
¶5 3. Was the decision of Missoula County to extend dependent health care benefits to domestic partners of county employees unlawful because the county has not adopted and published formal guidelines for encouraging public participation in county business pursuant to § 2-3-103(2), MCA?
FACTUAL AND PROCEDURAL BACKGROUND
¶6 Plaintiffs learned from a fellow church member that Missoula County was considering amending its Missoula County Employee Benefits Plan to extend dependent coverage to domestic partners. On Wednesday, March 12, 2003, Plaintiffs attended the Missoula County Commission’s regularly scheduled meeting and they openly voiced their objections to including domestic partners in the Missoula County Employee Benefits Plan.
¶7 On March 14, 2003, The Missoulian, a newspaper of general circulation in Missoula County, printed a news story stating that the County Commissioners were considering extending benefits to domestic partners of county employees and that the commissioners were likely to make a decision on the issue in April.
¶8 Missoula County has established policies and procedures for posting notice of public meetings to encourage public participation in county business. However, these procedures are not adopted as formal rules and are not published for public distribution under § 2-3-103(2), MCA. On each Friday the agenda for the next week’s commission meetings is posted on the county website and on the bulletin board outside the commissioners’ office. Copies of the weekly meeting schedule are also provided to persons and organizations that have requested it. The weekly schedule is supplemented by a daily schedule which is posted the preceding afternoon on the bulletin board outside the commissioners’ office. The agenda for each meeting is also posted on the bulletin board the day preceding the meeting. The agenda is also e-mailed to The Missoulian. Notice of particular meetings is given to individuals who request it, and to individuals required by statute to *208 receive such notice.
¶9 The agenda for the Thursday, April 3, 2003, county commission meeting was posted on the bulletin board on April 2, 2003, and was e-mailed to The Missoulian in accordance with the procedures listed above. The agenda listed a discussion of domestic partner benefits as an amendment to the Missoula County Employee Benefits Plan. At the meeting on April 3, 2003, Missoula County extended dependent coverage to domestic partners of county employees.
¶10 On May 1, 2003, Plaintiffs filed a complaint in District Court alleging that Missoula County failed to give them proper notice of the vote regarding domestic partner benefits, thereby depriving them of their constitutional right to participate in the operation of government. They sought to void the action of the county commission making such benefits available.
¶11 Missoula County filed a motion to dismiss; Plaintiffs opposed the motion and moved the court that it be treated as a motion for summary judgment. On May 24, 2004, the District Court entered its order granting summary judgment in favor of Missoula County. Plaintiffs now appeal from that order.
STANDARD OF REVIEW
¶12 We review a district court’s grant of summary judgment de novo, applying the same evaluation under Rule 56, M.R.Civ.P., as the district court. Motta v. Philipsburg Sch. Bd. Trustees, Dist. #1, 2004 MT 256, ¶ 11, 323 Mont. 72, ¶ 11,98 P.3d 673, ¶ 11. The party moving for summary judgment has the initial burden of proving that there are no genuine issues of material fact that would permit a non-moving party to succeed on the merits of the case. Motta, ¶ 11. If the moving party meets that burden, the non-moving party must provide substantial evidence that raises a genuine issue of material fact in order to avoid summary judgment. Motta, ¶ 11. Once it is established that no genuine issues of material fact exist, the district court must then determine whether the moving party is entitled to judgment as a matter of law. Motta, ¶ 11. This Court reviews that determination to decide whether the district court erred. Motta, ¶ 11.
DISCUSSION ISSUE ONE
¶13 Is extending dependent health care benefits to domestic partners of county employees an issue of significant public interest under § 2-3-103(1), MCA?
*209 ¶14 Article II, Section 8, of the Montana Constitution provides:
The public has the right to expect governmental agencies to afford such reasonable opportunity for citizen participation in the operation of the agencies prior to the final decision as may be provided by law.
This section guarantees citizens the right of participation in the operation of government agencies prior to the making of a final decision. Sonstelie v. Bd. of Trustees for Sch. Dist. No. 10, Flathead County (1983), 202 Mont. 414, 418, 658 P.2d 413, 415. The Montana Public Meeting Act[1], §§ 2-3-101, et. seq., MCA (2001), provides the statutory guidelines for ensuring the requirements of Article II, Section 8 are met.[2] Section 2-3-103(1), MCA, requires each public agency to adopt policies that permit and encourage public participation in agency decisions and also to assure adequate notice is given before a final agency action of significant public interest is taken. The provisions of § 2-3-103(1), MCA, are only triggered when action is being taken on an issue of significant public interest. Where an issue of significant public interest is concerned, policies adopted pursuant to § 2-3-103(1), MCA, must include a method of affording interested persons reasonable opportunity to submit data, views or arguments, orally or in written form, prior to the time a final agency decision is made. Section 2-3-111(1), MCA.
¶15 Relying on an opinion of the Montana Attorney General, 47 Mont. Op. No. 13 Atty. Gen. (1998), Plaintiffs argue that extending health benefits to domestic partners of Missoula County employees is a matter of significant public interest. Thus, according to Plaintiffs, Missoula County was obligated to encourage public participation and to provide sufficient notice prior to taking a final vote on the issue.
¶16 The term “significant public interest” is not defined in the Montana Public Meeting Act. This Court has not previously defined the term in the context of § 2-3-103(1), MCA. However, in 1998, the Attorney General addressed this issue, and concluded that “any non-ministerial decision or action of a county commission which has meaning to or affects a portion of the community requires notice to the public and the opportunity for the public to participate in the *210 decision-making process.” 47 Mont. Op. No. 13 Atty. Gen. at 6. The Attorney General reasoned that the term significant public interest, as it applies to public participation in agency actions, is limited by § 2-3-112(3), MCA, which excepts a decision involving no more than a ministerial act from the requirements of § 2-3-103(1), MCA. 47 Mont. Op. No. 13 Atty. Gen. at 5. The Attorney General opined that a ministerial act was one performed pursuant to legal authority, and requiring no exercise of judgment. 47 Mont. Op. No. 13 Atty. Gen. at 5.
¶17 Relying on a district court decision in Seliski v. Rosebud County, No. DV 94-13 (Mont. 16th Jud. Dist., April 12, 1995), the Attorney General also concluded that since the Montana Public Meeting Act is based on a constitutional mandate, county commissioners should resolve any doubts about whether an issue is of significant public interest or whether adequate notice has been provided in favor of increased public participation. 47 Mont. Op. No. 13 Atty. Gen. at 5.
¶18 Missoula County argues that making dependant health care coverage available to domestic partners is not an issue of significant public interest because the Missoula County Employee Benefits Plan is a self-insurance plan with employees making an out of pocket payment for a portion of the cost of dependent coverage. Therefore, the only direct impact of the decision is on Missoula County employees. According to Missoula County, whether to provide such benefits is a purely administrative decision.
¶19 The national attention afforded this Court’s recent decision in Snetsinger v. Mont. Univ. Sys., 2004 MT 390, 325 Mont. 148, 104 P.3d 445, indicates that Missoula County’s decision to extend health care benefits to domestic partners is one of significant public interest.
¶20 In Snetsinger, this Court held that the Montana University System’s policy of extending dependent health care benefits to university employees, who claimed they were married by common law, while denying benefits to same-sex domestic partners, violated the equal protection clause, Article II, Section 4, of the Montana Constitution. Snetsinger, §§ 27, 35. The decision received state and nation-wide coverage in the media due to the high level of public interest in issues relating to gay and lesbian rights.[3]
¶21 Also, House Bill 259 (HB 259) was introduced during the 2005 *211 Montana Legislative Session for the purpose of authorizing civil unions in Montana. The bill included a provision for extending group insurance to domestic partners of state employees who enter a civil union.[4] HB 259 was tabled in the House Judiciary Committee on January 26, 2005, after a hearing which “brought hundreds of opponents to the Capitol...[who] overflowed the hearing room and spilled down the hall.”[5]
¶22 With all the public attention and scrutiny attendant to government decisions surrounding health insurance benefits for domestic partners, we conclude that the issue of extending health insurance benefits to the domestic partners of Missoula County employees is an issue of significant public interest. Notice and an opportunity for public participation were required before the action of Missoula County. This does not, however, automatically translate to a holding that the decision of Missoula County was in violation of the law.
ISSUE TWO
¶23 Did Missoula County provide sufficient notice of its decision to extend dependent health care benefits to domestic partners of county employees to satisfy the requirements of § 2-3-103(1), MCA?
¶24 Plaintiffs again rely on the 1998 advisory opinion issued by the Attorney General for the proposition that Missoula County failed to comply with its statutory obligation under § 2-3-103(2), MCA (2001), to provide adequate notice of the April 3 commissioners meeting at which health benefits were extended to domestic partners of Missoula County employees. In that opinion, the Attorney General concluded that a county commission that provides no notice of public meetings other than to declare that county business is conducted between 9:30 a.m. and 5 p.m., Monday through Friday, has not provided sufficient notice to meet its statutory obligation under §§ 2-3-101, et. seq., MCA. 47 Mont. Op. No. 13 Atty. Gen. at 3-4.
¶25 As we stated in O’Shaughnessy v. Wolfe (1984), 212 Mont. 12, 16, 685 P.2d 361, 363, “[a]n attorney general’s opinion is not binding on the Supreme Court.” Nevertheless, in this case Missoula County did *212 much more than simply state the hours during which county business is conducted. The commissioners followed the same procedures for the April 3 meeting used for posting public notice of all county commission meetings. The procedures followed by Missoula County are similar to the procedures the Attorney General recommended counties follow in order to comply with §§ 2-3-101, et. seq., MCA.
¶26 The Attorney General suggested that county commissioners schedule regular meetings for the same time each week or month, and prepare and post an agenda 48 hours in advance to notify the public of the topics on the agenda. 47 Mont. Op. No. 13 Atty. Gen. at 6. The agenda may also be published by the local press. 47 Mont. Op. No. 13 Atty. Gen. at 6. New items should not be added to the agenda, but should be carried over to the next regularly scheduled meeting. 47 Mont. Op. No. 13 Atty. Gen. at 6. Commissioners could also schedule a special meeting to discuss matters of significant public interest by issuing a resolution and providing 48 hours posted public notice. 47 Mont. Op. No. 13 Atty. Gen. at 6.
¶27 In the case before us, the County posted a schedule of the meetings for the week of March 31 to April 4, 2003, on the previous Friday. The schedule merely stated that an administrative meeting would be held on Thursday, April 3,2003, in room 204 from 10:00 a.m. to 11:00 a.m. The actual agenda for the meeting was posted on April 2, 2003, 24 hours prior to the meeting, and was e-mailed to The Missoulian. The agenda clearly stated that three amendments would be discussed with regards to the Missoula County Employee Benefits Plan. One of the amendments involved “Domestic Partner Benefits.”
¶28 Plaintiffs argue that the administrative meeting agenda failed to provide adequate public notice because it was printed in “very small print” and was “buried amidst other matters.” According to Plaintiffs, simply posting a meeting agenda on a county bulletin board 24 hours prior to a meeting is insufficient because such a procedure requires the whole city of Missoula to crowd into the hall to inspect the bulletin board each afternoon. Plaintiffs also argue the notice was insufficient because it did not “flag” domestic partner benefits as an issue of significant public interest.
¶29 Plaintiffs also rely on this Court’s holding in Bd. of Trustees v. County Comm’rs. (1980), 186 Mont. 148, 606 P.2d 1069, for the proposition that the article published in The Missoulian on March 14, 2003, in which the newspaper said that the County Commissioners would probably make a decision on the issue sometime in April, failed to provide the public with sufficient facts concerning the time and *213 place of the meeting. They go on to say Missoula County must be required to post the agenda 48 hours in advance.
¶30 Missoula County responds that the public had adequate notice of the meeting and did, in fact, participate in the decision making process before the commissioners made a final decision. They note that Plaintiffs themselves attended a regularly scheduled public meeting on March 12, 2003, in which they voiced their objections to the proposal to extend health benefits to domestic partners under the County Employee Benefits Plan. Missoula County further argues that ample notice of the April 3 meeting was provided to the public through the information provided by The Missoulian in the article published on March 14,2003; by posting the meeting agenda 24 hours in advance on the County Commissioners’ bulletin board; and by e-mailing the agenda to The Missoulian on April 2.
¶31 While county commissioners are required pursuant to § 2-3-103(1), MCA, to give adequate public notice before a final decision can be made regarding an issue of significant public interest, the public meeting statutes do not require the commissioners to utilize a specific method of notification. Some guidance is provided to county commissioners in regard to the notice requirements of § 2-3-103(1), MCA, in § 2-3-104, MCA, which states that an agency is presumed to have met such requirement if, for example, a local newspaper has published a news story concerning the decision sufficiently prior to a final decision to permit public comment on the matter. Section 2-3-104(4), MCA. In Bd. of Trustees, 186 Mont. at 155, 606 P.2d at 1073, we concluded that a news article that does not specify the time and place of such meeting does not satisfy the notice requirements of § 2-3-103(1), MCA. Thus, in this case, The Missoulian article did not establish that the County met the notice requirements of § 2-3-103(1), MCA, because it did not specify the time and place of the meeting. However, the article did alert the public that the matter was under consideration and would soon be acted on.
¶32 In addition to the newspaper article, the agenda for the April 3 meeting was publicly posted 24 hours in advance of the meeting, which was the same procedure used to post notice of all regular weekly meetings. There is no statutory requirement that county commissioners post notice of a regularly scheduled meeting 48 hours in advance. The standard is simply that county commissioners must provide notice that is adequate to ensure the public has the opportunity to participate in the decision-making process. See § 2-3-103(1), MCA.
*214 ¶33 The 48 hour notice requirement in Bd. of Trustees is not applicable in this case. At issue in Bd. of Trustees was whether the county commission provided adequate notice of a “special” meeting conducted via teleconference during which they conditionally approved a preliminary subdivision plat. We concluded that, pursuant to § 7-5-2122, MCA, before county commissioners could call such a “special” meeting, they had to post public notice 48 hours in advance. Bd. of Trustees, 186 Mont. at 150, 155, 606 P.2d at 1070, 1073.
¶34 In Sonstelie, we considered whether a Flathead County School Board gave adequate notice of a “special” School Board meeting that took place on March 14, 1981, during which the renewal of teacher contracts was decided, when the only notice given was a radio broadcast 48 hours in advance. We held that the School Board met its obligation under § 2-3-103(1), MCA, to ensure that the public had ample opportunity to participate in the decision before the Board took final action. Sonstelie, 202 Mont. at 416,418-21,658 P.2d at 414-17. In reaching our conclusion, we considered the fact that the public was given the opportunity to comment on the issue at a public meeting on March 10; that the public had in fact commented on the issue during this meeting; and that those who attended the March 10 meeting were notified that decisions regarding contracts for tenured and non-tenured teachers had to be made by April 1 and April 15, respectively, that such decisions had not yet been made, and that the next regularly scheduled public meeting would be held April 14. Sonstelie, 202 Mont. at 420-21, 658 P.2d at 417. In Sonstelie, these facts, when considered together, were sufficient to prove that the School Board had given adequate notice of the meeting.
¶35 Similar to Sonstelie, when the facts in the case before us are taken together, they establish sufficient notice to satisfy the requirements of § 2-3-103(1), MCA. Missoula County afforded Plaintiffs an opportunity to voice their opposition to the domestic partner inclusion on March 12, 2003, even though the issue was not on the agenda for that meeting. Also, Plaintiffs, who were aware of the fact that the issue was being considered by the county commission, could have requested that they be advised when the matter again came up for discussion. There was certainly no need for them to be “glued to the Commissioners’ bulletin board” as suggested by the dissent.
¶36 Then, on March 14,2003, The Missoulian published an article which stated that the County would be making a decision on the issue sometime in April. On April 2,2003, the County Commissioners posted notice that the issue would be discussed at the administrative meeting *215 on April 3, and e-mailed the agenda to The Missoulian. The County Commissioners used the same procedures they follow for posting notice of all regularly scheduled business. The commissioners voted on the issue at a meeting that was open to the public on April 3. While the dissent takes issue with Missoula County’s procedures for notice, and complains about the size of the typeface, its placement on the agenda, and the wording used, it ignores the undisputed fact that these procedures were successful in giving notice to these interested Plaintiffs that the issue was on the table. It appears, however, that Plaintiffs’ interest was not significant enough in their minds to move them to request that they be given notice of any further discussions and action. In no way did the commissioners “hide the ball” as suggested by the dissent. Accordingly, the Court concludes that in this instance the notice afforded the public on the issue in question was sufficient to satisfy the requirements of § 2-3-103(1), MCA.
ISSUE THREE
¶37 Was the decision of Missoula County to extend dependent health care benefits to partners of County employees unlawful because the County has not adopted and published formal guidelines for encouraging public participation in county business pursuant to § 2-3-103(2), MCA?
¶38 Section 2-3-102(1), MCA, defines “agency” as “any board, bureau, commission, department, authority, or officer of the state or local government authorized by law to make rules, determine contested cases, or enter into contracts ....”
¶39 Section 2-3-103(2), MCA (2001), provides:
The governor shall insure that each board, bureau, commission, department, authority, agency, or officer of the state adopts coordinated rules for its programs, which guidelines shall provide policies and procedures to facilitate public participation in those programs, consistent with subsection (1) of this section. These guidelines shall be adopted as rules and published in a manner which may be provided to a member of the public upon request.
¶40 Plaintiffs contend that § 2-3-103(2), MCA (2001), requires that Missoula County adopt guidelines in the form of rules and publish them so that they could be provided to the public upon request. Since it has not done so, they argue the decision to provide dependent health care benefits to domestic partners of county employees is unlawful.
¶41 Plaintiffs’ argument is that because § 2-3-102, MCA, defines “agency” to include any commission of local government, the *216 Legislature intended that all government agencies, including county commissions, are required by § 2-3-103(2), MCA (2001), to publish formal guidelines which facilitate public participation in the government decision making process.
¶42 Plaintiffs further argue that this Court already applied the provisions of § 2-3-103(2), MCA (2001), to a local School Board in Sonstelie, 202 Mont. at 418, 658 P.2d at 416, requiring the School Board to develop “guidelines” to permit and encourage public participation in agency decisions of significant public interest.
¶43 Subsection (2) of § 2-3-103, MCA, was not at issue in Sonstelie. As stated earlier, the issue in Sonstelie was whether the School Board provided adequate notice of a particular School Board meeting held via teleconference, not whether the School Board was required to adopt and publish formal guidelines. Sonstelie has no application in deciding the issue of whether Missoula County failed to adopt formal guidelines in violation of ( 2-3-103(2), MCA (2001).
¶44 It is clear from the plain language of § 2-3-103(2), MCA (2001), that the provisions of this subsection only apply to state agencies. The subsection reads “that each board, bureau, commission, department, authority, agency, or officer of the state” shall adopt coordinated rules. Section 2-3-103(2), MCA (2001), (Emphasis added).[6] We have consistently held that “[t]he rules of statutory construction require the language of a statute to be construed according to its plain meaning.” Haux v. Mont. Rail Link, Inc., 2004 MT 233, ¶ 12, 322 Mont. 456, ¶ 12, 97 P.3d 540, ¶ 12. The language of § 2-3-103(2), MCA (2001), is clear that it applies to the executive branch of Montana government. We hold that Missoula County is not required by § 2-3-103(2), MCA (2001), to adopt and publish formal guidelines for encouraging public participation in County business.
CONCLUSION
¶45 Having concluded that Missoula County gave adequate notice *217 of its pending decision whether to extend dependent health care benefits to domestic partners of County employees, and that it was not required by § 2-3-103(2), MCA (2001), to adopt and publish formal guidelines for encouraging public participation in County business, we affirm the decision of the District Court.
JUSTICES COTTER, LEAPHART and MORRIS concur.

 Although §§ 2-3-101, et. seq., MCA, are not officially titled the “Montana Public Meeting Act,” for convenience we will refer to them as such.

 Missoula County adopted the policy in question before April 22, 2003, the date on which the 2003 amendments to the Montana Public Meeting Act went into effect. Therefore, this case will be decided based on the 2001 version of the statutes.

 See e.g., Adam Liptak, Montana Universities Must Offer Health Insurance to Gay Employees’ Partners, Court Rules, The New York Times, Dec. 31, 2004; Susan Gallagher, Supreme Court Says Gay Couples Due Benefits, The Missoulian, Dec. 30, 2004.

 H.B. 259, 59th Leg., Reg. Sess., (Mont. 2005).

 Allison Farrell, Legislature Kills Ml Human Rights Bills, The Missoulian, Apr. 18, 2005.

 In 2003, the Montana Legislature amended subsection (2) to clarify its intent with respect to which government agencies are obligated to comply with its provisions. The amended language reads as follows:
The governor shall ensure that each board, bureau, commission, department, authority, agency, or officer of the executive branch of the state adopts coordinated rules for its programs. The guidelines must provide policies and procedures to facilitate public participation in those programs, consistent with subsection (1). These guidelines must be adopted as rules and published in a manner so that the rules may be provided to a member of the public upon request.
Section 2-3-103(2), MCA (2003) (emphasis added).