FILED

02/28/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 16-0289

DA 16-0289

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 38

MICHAEL SULLIVAN; JOY W. HUNT; DR. HERSCHEL R.
and MARY BETH HARTER,

      Plaintiffs,

  v.

THOMAS CHEREWICK and RONALD M. HENRY,

      Defendants.

RONALD M. HENRY, Counterclaim Plaintiff, and
WESTERN INVESTMENTS, INC., Third-Party Plaintiff,

      Counterclaim Plaintiffs and Appellants,

  v.

MICHAEL SULLIVAN; JOY W. HUNT; DR. HERSCHEL R.
and MARY BETH HARTER,

      Counterclaim Defendants and Appellees.

APPEAL FROM:    District Court of the Twenty-Second Judicial District,
                In and For the County of Carbon, Cause No. DV 11-122
                Honorable Blair Jones, Presiding Judge

COUNSEL OF RECORD:

      For Appellants:

            Paula Saye, Saye Law, Absarokee, Montana
            (for Ronald M. Henry and Western Investments, Inc.)

            T. Thomas Singer, Frederick P. Landers, Axilon Law Group, PLLC,
            Billings, Montana (for Thomas Cherewick and Ronald M. Henry)

For Appellees:

Michael B. Anderson, Anderson & Liechty, P.C., Billings, Montana
(for Dr. Herschel R. and Mary Beth Harter)

Brendon J. Rohan, Poore, Roth & Robinson, P.C., Butte, Montana
(for Michael Sullivan)

John F. (Jack) Jenks, J. Wayne Capp, Capp & Jenks, P.C., Missoula,
Montana (for Michael Sullivan, Joy W. Hunt, Dr. Herschel R. and
Mary Beth Harter)

Paul N. Tranel, Katie C. Guffin, Bohyer, Erickson, Beaudette & Tranel,
P.C., Missoula, Montana (for Joy W. Hunt)

Submitted on Briefs:  January 11, 2017

Decided:  February 28, 2017

Filed:

_____
Clerk

Justice Beth Baker delivered the Opinion of the Court.

¶1 The parties have been engaged for years in a contentious dispute regarding the management of a real estate development in which they all owned property. The Plaintiffs sued to restrain Thomas Cherewick and Ronald Henry from actions that Plaintiffs alleged were unauthorized or exceeded their authority as directors and officers of the development's property owners' association.[1] Henry and his company, Western Investments, Inc., counterclaimed, alleging that Landowners had conspired to interfere with his business. The District Court granted summary judgment against all parties on their respective claims. It entered a final judgment, declining to award attorney fees and costs to Henry and Cherewick. There are two issues on appeal:

> *1. Whether the District Court erred in granting Landowners summary judgment on Henry's and Western Investments' counterclaims for conspiracy and other alleged tortious conduct;*
>
> *2. Whether the District Court abused its discretion in denying Henry's and Cherewick's motion for attorney fees after they prevailed on the Plaintiff's claims against them.*

¶2 We affirm.

## PROCEDURAL AND FACTUAL BACKGROUND

¶3 This case has a contentious history, consuming nearly five years in litigation, with almost 600 documents in the District Court record, five separate summary judgment orders, and eleven briefs from various arrangements of parties covering two distinct claims on appeal. The District Court described it as "a muddled and chaotic case . . . [in

---

[1] The Plaintiffs remaining in the action are Appellees Michael Sullivan, Joy Hunt, Dr. Herschel Harter, and Mary Beth Harter. We refer to the Appellees collectively as Landowners.

3

which] neither Plaintiffs nor Defendants substantially prevailed on any of the asserted claims and counterclaims."

¶4     Henry, Cherewick, and Landowners all owned property in Remington Ranch—a real estate development comprising several subdivisions outside of Red Lodge, Montana. Henry developed much of Remington Ranch through his company Western Investments. Western Investments owned numerous lots in Remington Ranch. Western Investments purchased Dr. Herschel and Mary Beth Harters' interest in a tract of land in one of the subdivisions. In exchange, Western Investments gave the Harters a promissory note for $750,000. After Western Investments failed to make any payments on the note, the Harters filed a UCC-1 Financing Statement and vendor's lien on certain lots that Western Investments was trying to sell.

¶5     The Remington Ranch Association (Association) is an "umbrella" property owners' association. It is responsible for maintenance of the common areas of the subdivisions that make up Remington Ranch. While each individual subdivision within Remington Ranch has its own declaration of covenants, conditions, and restrictions, the Association also has its own declaration of covenants, conditions, and restrictions. Landowners are all members of the Association, and Henry and Cherewick were directors and officers of the Association.

¶6     The breaking point in a longstanding period of discord between the parties came when Henry announced that he was going to try to develop part of the property as a resort. Landowners reacted to Henry's announcement by organizing and discussing their

options for preventing commercial development. Ultimately, Landowners—along with about twenty other Remington Ranch property owners—filed a complaint against Cherewick, Henry, the Association, and Association director Nancy Gammill.[2] Landowners challenged the Association's authority over the affairs of Remington Ranch's component subdivisions. Landowners also claimed that Henry and Cherewick took actions that were either unauthorized or exceeded their authority as directors.

¶7 Henry and Western Investments brought several counterclaims against Landowners, including defamation, tortious interference with business relations and prospective economic opportunity, negligent or intentional infliction of emotional distress, slander of title, abuse of process, and civil conspiracy. The basic premise of the counterclaims was that Landowners colluded to drive Henry into bankruptcy, to stop his planned commercial development of the site, and to ruin his reputation in the community. Henry and Western Investments also sought punitive damages.

¶8 Over the course of nearly five years, the parties engaged in extensive discovery and litigated their various claims and counterclaims through dozens of motions. In the end, the District Court entered summary judgment orders granting judgment to Henry and Cherewick on Landowners' claims. The court also granted Landowners summary judgment on Henry's and Western Investments' counterclaims because it concluded that Henry and Western Investments failed to produce evidence establishing each of the elements of the counterclaims. Finally, the court denied Henry's and Cherewick's

---

[2] The Association, Gammill, and all plaintiffs except for Landowners were dismissed for various reasons during the course of litigation.

motion for attorney fees and costs on Landowners' claims because it determined that they were not a prevailing party. Henry and Cherewick appeal the court's refusal to award attorney fees; Henry and Western Investments appeal the dismissal of their counterclaims.

**STANDARDS OF REVIEW**

¶9　We review summary judgment rulings de novo, applying the standards set forth in M. R. Civ. P. 56(c)(3). *Bird v. Cascade Cnty.*, 2016 MT 345, ¶ 9, 386 Mont. 69, 386 P.3d 602. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Bird*, ¶ 9. Once the moving party has met its burden, the opposing party must present material and substantial evidence to raise a genuine issue of material fact. *Bird*, ¶ 9. We will draw all reasonable inferences from the offered evidence in favor of the party opposing summary judgment; but conclusory statements, speculative assertions, and mere denials are insufficient to defeat a motion for summary judgment. *Bird*, ¶ 9. We review a district court's conclusions of law to determine whether they are correct. *Bird*, ¶ 9.

¶10　We review a district court's conclusion regarding the existence of legal authority to award attorney fees for correctness. *City of Helena v. Svee*, 2014 MT 311, ¶ 7, 377 Mont. 158, 339 P.3d 32. If legal authority exists, we review a district court's order granting or denying attorney fees for abuse of discretion. *Svee*, ¶ 7. We review a district court's determination of "prevailing" or "losing" parties for abuse of discretion as well.

6

*Whipps, L.L.C. v. Kaufman, Vidal, Hileman, & Ramlow, P.C.*, 2007 MT 66, ¶ 6, 336 Mont. 386, 156 P.3d 11. A district court abuses its discretion when it acts arbitrarily, without employment of conscientious judgment, or in excess of the bounds of reason resulting in substantial injustice. *Whipps, L.L.C.*, ¶ 6.

## DISCUSSION

¶11 *1. Whether the District Court erred in granting Landowners summary judgment on Henry's and Western Investments' counterclaims for conspiracy and other alleged tortious conduct.*

¶12 Henry and Western Investments asserted the following counterclaims against Landowners: abuse of process, defamation, negligent or intentional infliction of emotional distress, conspiracy, slander of title, and tortious interference; they also sought punitive damages. While the court granted Landowners summary judgment on all of the counterclaims, Henry and Western Investments address only a few explicitly on appeal. We briefly address each claim.

**I. Abuse of process, defamation, and negligent or intentional infliction of emotional distress claims.**

¶13 The District Court first concluded that Henry and Western Investments abandoned their claims of abuse of process and defamation because they did not include any argument regarding those claims in their briefing to the court; therefore, the court granted Landowners summary judgment on those claims. With regard to the negligent or intentional infliction of emotional distress claim, the District Court noted that Western Investments, as an entity, could not sustain such a claim. The court noted further that Henry's arguments contained no discussion of the factual or legal basis for the emotional

7

distress claim against Landowners.  After determining that the record did not contain any evidence that Landowners caused Henry any emotional distress, the District Court granted Landowners summary judgment.

¶14   On appeal, Henry and Western Investments do not contest the District Court's conclusion that they abandoned their abuse of process and defamation claims.  Nor do they offer any arguments regarding the court's conclusion as to their negligent or intentional infliction of emotional distress claim.  It is not our responsibility "to develop legal analysis that might support a party's position."  *State v. Gunderson*, 2010 MT 166, ¶ 12, 357 Mont. 142, 237 P.3d 74.  Accordingly, we conclude that the District Court correctly granted Landowners summary judgment on Henry's and Western Investments' abuse of process, defamation, and negligent or intentional infliction of emotional distress counterclaims.

## II.   Conspiracy, slander of title, tortious interference, and punitive damages claims.

¶15   Henry's and Western Investments' conspiracy claim alleged that the Harters conspired with the other Remington Ranch property owners to stop Henry's planned development, force him into bankruptcy, and ruin his business relationships in the community.  In addressing the civil conspiracy claim, the court recognized that Henry's and Western Investments' "various theories of liability are generally centered on only a few overt actions taken by the Harters.  They allege that the Harters' overt acts—and any liability tied to these acts—should be imputed to all other remaining counterclaim defendants."  In an effort to simplify the analysis of the remaining claims, the court chose

8

to "first discuss whether the record contains any evidence of a conspiracy between the remaining counterclaim defendants that would allow the Court to impute the actions of the counterclaim defendants to one another."

¶16 The court noted Henry's and Western Investments' claim that the evidence supported a finding that there was a conspiracy between Landowners to stop the resort's construction at Remington Ranch. The court determined that such an assertion alone, however, "does not assert a claim for civil conspiracy even if true" because there is "nothing inherently unlawful about protesting a resort planned to be built in a complainant's backyard." Instead, the court concluded, in order to prevail on their claim of civil conspiracy, Henry and Western Investments would have to prove that Landowners "had a 'meeting of the minds' to use unlawful means in pursuit of their otherwise lawful goal of stopping the development of the resort."

¶17 The court recognized Henry's and Western Investments' assertion that the "unlawful means" Landowners used to stop the resort were the Harters' filings. The court acknowledged that the evidence demonstrated Landowners' opposition to the resort's construction; it determined, however, that the evidence did "not support an inference that [Landowners] agreed to use unlawful means to stop the development of the Remington Resort or that the other counterclaim defendants even knew about the Harters' filings." Thus, the court held that Henry's and Western Investments' claim of conspiracy was nothing more than "mere speculation, insufficient to survive summary judgment."

¶18 The court's determination regarding the conspiracy claim framed its analysis of the remaining claims. Henry's and Western Investments' additional claims centered on the Harters' filings. Because the court concluded that there was no conspiracy between Landowners, the court determined that the Harters' conduct was not attributable to Hunt or Sullivan. Based in large part on that determination, the court concluded that Henry and Western Investments had failed to make a prima facie case for the remaining claims against Hunt and Sullivan and therefore granted them summary judgment. Because the Harters filed the liens, the District Court analyzed in more depth the remaining claims against them.

¶19 In addressing Henry's and Western Investments' claim that the Harters' filings constituted slander of title, the court first noted that the relevant tracts of land were owned solely by Western Investments. Thus, the court concluded that Henry did not have a claim for slander of title. The court focused its analysis of Western Investments' claim on two elements—whether the Harters acted with malice and whether the Harters' actions caused Western Investments any special damages. The court determined that there were unresolved fact issues regarding whether the Harters acted with malice, but it concluded that Western Investments' slander of title claim must fail "for lack of provable damages." The court noted that there was no evidence demonstrating that the Harters' filings prevented any sale of lots by Western Investments. Because Western Investments had not presented a prima facie slander of title claim, the court granted the Harters summary judgment on the claim.

¶20 Similarly, the District Court determined that Henry and Western Investments had failed to present a prima facie claim of tortious interference. Henry's and Western Investments' tortious interference claim alleged that the Harters interfered with their efforts to develop the resort. The court opined:

> Given that Henry did not own . . . the land upon which the Resort was to be located[ ], that the owner of [the land] had not taken any steps nor shown any affirmative interest in developing [the land] into the Remington Resort, and that Henry had no financing in place to develop the Resort, [Henry's and Western Investments'] assertion that it was the Harters who caused the Resort's failure lacks evidentiary foundation and is speculative.

Thus, the court granted the Harters summary judgment on the tortious interference claim.

¶21 Lastly, the court held that Henry's and Western Investments' claim for punitive damages must fail "[g]iven a lack of any underlying liability against the Harters." Before finishing its order, the court noted that the parties "have a great deal of animosity toward one another." The court reiterated that in order for the alleged claims "to proceed to trial, it was incumbent on Henry and Western Investments to provide the Court with at least some admissible evidence as to each of the elements of their counterclaims. But after more than four years of litigation, this evidence either does not exist or has not been produced." Accordingly, the District Court granted Landowners summary judgment in all respects.

¶22 Henry and Western Investments argue generally that the District Court's conclusions on their counterclaims simply adopt Landowners' position instead of considering all of the conflicting evidence submitted by Henry and Western Investments. They assert that they presented substantial evidence that the Harters' purpose in making

11

the filings was to interfere with Henry's business by stopping the sale of the lots. They stress that a jury also could reasonably infer malice from the Harters' filing the liens because they allege that the Harters had knowledge that the liens would interfere with pending sales of the encumbered lots. And selling those lots was Henry's only means of generating income to meet his financial obligations.

¶23 Henry and Western Investments assert further that the court erred by concluding that the other claims were tied to their theory of conspiracy. They claim that they asserted "multiple stand-alone counts." As to their civil conspiracy claim, Henry and Western Investments contend that the object of the conspiracy was to tortiously interfere with Henry's business and that the unlawful objective was the slander of title. Henry and Western Investments contend that the District Court erred because it is the function of the jury to determine whether there was a meeting of the minds, whether Landowners engaged in an unlawful overt act, and whether damages resulted because of Landowners' conduct.

¶24 A valid civil conspiracy claim requires that each of the following elements be established: "(1) two or more persons . . .; (2) an object to be accomplished; (3) a meeting of the minds on the object or course of action; (4) one or more unlawful overt acts; and (5) damages as the proximate result thereof." *Schumacker v. Meridian Oil Co.*, 1998 MT 79, ¶ 18, 288 Mont. 217, 956 P.2d 1370 (citing *Simmons Oil Corp. v. Holly Corp.*, 258 Mont. 79, 91, 852 P.2d 523, 530 (1993)).

12

¶25 Here, the first two elements are clearly met. Landowners are a group of two or more persons and the object they sought to accomplish was preventing the construction of a resort at Remington Ranch. Contrary to the District Court's conclusion, the third element does not require "a 'meeting of the minds' to use unlawful means"; rather, the third element requires either a meeting of the minds on the object to be accomplished *or* a meeting of the minds on the course of action. *Schumacker*, ¶ 18. As the District Court recognized, the "evidence certainly indicates that the Harters, Sullivan, Hunt, and others did not want the Remington Resort to come to fruition . . . and that they agreed action should be taken to stop the development of the Resort." Accordingly, there was a meeting of the minds as to the object to be accomplished and element three is therefore met as well.

¶26 The fourth civil conspiracy element requires "one or more unlawful overt acts." *Schumacker*, ¶ 18. It is the unlawful act—and not the conspiracy itself—that gives rise to a civil conspiracy cause of action. *Schumacker*, ¶ 18. Henry and Western Investments assert that the Harters' filing of the allegedly false UCC-1 and vendor's lien is the "unlawful act" because the filings constitute slander of title.

¶27 Slander of title occurs when "one maliciously publishes false matter which brings in question or disparages the title to property, thereby causing special damage to the owner." *Pryor v. Babcock Bldg. Corp.*, 2002 MT 68, ¶ 10, 309 Mont. 222, 45 P.3d 35 (citations and internal quotations omitted). Although the District Court acknowledged that there may be a genuine issue of material fact regarding whether the Harters acted

13

with malice in filing the liens, it concluded that Henry and Western Investments failed to establish that they suffered any damages as a result of the liens.

¶28 Henry asserts that he suffered "damages in the hundreds of thousands of dollars" due to the Harters' filing of the allegedly false liens. He contends that the damages resulted when he was unable to sell the lots with the liens attached. Henry further alleges that he suffered damages because he incurred attorney fees and other costs in removing the liens.

¶29 The District Court determined, and we agree, that Henry and Western Investments failed to establish a triable factual issue that the Harters' filing of the liens caused them damages. As the District Court noted, the affidavits of the potential buyers of the lots— on which Henry and Western Investments relied to show damages—"contradict the notion that the Harters' filings prevented any lot sales." The affidavits of both potential buyers demonstrate that neither buyer had reached an agreement with Henry or Western Investments regarding the purchase of the lots. Further, neither of the potential buyers referenced the liens as the reason they did not buy the properties; rather, they both stated that, if anything, their decisions were affected by the animosity between Remington Ranch property owners and Henry.

¶30 Additionally, there were three other encumbrances totaling nearly two million dollars on the properties at issue. As the District Court observed, Henry and Western Investments presented "no argument or evidence" that they sought a release or removal of all of those encumbrances. Henry and Western Investments therefore failed to

14

demonstrate how title to the property was marketable. Finally, as the District Court emphasized, Henry "admitted he was not selling property in Remington Ranch during the time period the Harters filed their liens." In an October 2012 letter to a real estate company, Henry stated:

> Here are some facts. I closed my RE/MAX office in Red Lodge, Montana December 31, 2010. I have not had any "real estate services" nor have I provided any since that date. I do own property in the area but my properties have not been listed for sale nor have I tried to market any of my properties since the closing of my RE/MAX offices.

In the face of all of this evidence, Henry and Western Investments did not come forward with specific evidence, as opposed to speculation and argument, that the liens caused them damage.

¶31 Because Henry and Western Investments failed to present material and substantial evidence sufficient to raise an issue of material fact regarding whether they suffered damages, the District Court correctly concluded that their slander of title claim failed as a matter of law. Henry and Western Investments' civil conspiracy claim consequently fails as well because they have not established both that Landowners committed an unlawful act and that they suffered damages as the proximate result thereof. Accordingly, albeit for slightly different reasons, the District Court correctly granted Landowners summary judgment on Henry's and Western Investments' civil conspiracy claim.

¶32 We also are unpersuaded by Henry's and Western Investments' contentions regarding their tortious interference claim. Similar to civil conspiracy and slander of title, in order to assert a prima facie claim of tortious interference, Henry and Western

15

Investments must prove that "actual damages and loss resulted" as a consequence of the alleged conduct. *Hughes v. Lynch*, 2007 MT 177, ¶ 25, 338 Mont. 214, 164 P.3d 913. Though Henry and Western Investments contend that whether Landowners' "agreement to stop the development of the resort constitutes a tortious interference with their business is a question of fact for the jury," they have again offered only conclusory statements and speculative assertions that they suffered damages as a result thereof. Accordingly, we conclude that the District Court correctly granted Landowners summary judgment on Henry's and Western Investments' tortious interference claim.

¶33 Finally, given our conclusions on Henry's and Western Investments' underlying counterclaims, we affirm the District Court's grant of summary judgment to Landowners on the punitive damages claim. *See Finstad v. W. R. Grace & Co.-Conn.*, 2000 MT 228, ¶ 20, 301 Mont. 240, 8 P.3d 778 ("[P]unitive damages are merely a component of recovery of the underlying civil cause of action."). Although Henry and Western Investments make additional arguments, we conclude that the contentions discussed above are dispositive. Based on the foregoing analysis, we hold that the District Court correctly granted Landowners summary judgment on each of Henry's and Western Investments' counterclaims.

¶34 *2. Whether the District Court abused its discretion in denying Henry's and Cherewick's motion for attorney fees after they prevailed on the Plaintiff's claims against them.*

¶35 In a concise order, the District Court concluded that Henry and Cherewick were not prevailing parties on the claims Landowners brought in their initial complaint. The

16

court therefore determined that Henry and Cherewick were not entitled to an award of attorney fees and costs. In addition, the District Court concluded, "having presided over this case for four years and understanding well the circumstances of this case and the respective positions of the parties, in an exercise of its inherent equitable powers, the Court concludes that equity does not support an award of attorney fees and costs to any party."

¶36 Henry and Cherewick assert that they are entitled to attorney fees and costs because they prevailed on all of Landowners' claims against them—evidenced by the District Court's grant of summary judgment in their favor on those claims. Henry and Cherewick invoke the Association's declarations, as well as the declarations of each of Remington Ranch's component subdivisions, arguing that Landowners' claims asserted violations of the various declarations. Henry and Cherewick point out that Landowners' claims are the only claims in the case subject to the various declarations' fee provisions. Thus, they contend that as prevailing parties on these claims, they should have been awarded attorney fees and costs, and that the District Court erroneously took into account Henry's lack of success on his counterclaims.

¶37 Henry and Cherewick argue alternatively that the District Court erred by not considering whether they should be awarded attorney fees and costs under § 35-2-1306, MCA. They assert that Landowners' claims were derivative claims and that the District Court concluded that Landowners failed to meet the standing and procedural requirements of § 35-2-1301, MCA. Henry and Cherewick thus assert that Landowners

17

commenced and maintained their derivative claims without reasonable cause and they were accordingly entitled to attorney fees pursuant to the statute.

¶38 The general rule is that "attorney fees will not be awarded to the prevailing party in a lawsuit" absent statutory or contractual authority. *Svee*, ¶ 18. As Henry and Cherewick correctly point out, Landowners asserted claims under the various declarations and those declarations provide contractual authority for awarding the prevailing party attorney fees and costs. There is no "prevailing party," however, where both sides "gain a victory but also suffer a loss." *Whipps*, ¶ 9 (citing *H-D Irrigating, Inc. v. Kimble Props., Inc.*, 2000 MT 212, ¶ 60, 301 Mont. 34, 8 P.3d 95).

¶39 Focusing exclusively on Landowners' claims against Henry and Cherewick, we find no abuse of discretion in the District Court's conclusion that both sides gained a victory but also suffered a loss. During the course of the litigation, Landowners succeeded on several claims, mainly: securing a court-supervised election of new directors for the Association; persuading the court to appoint a receiver to manage the transition from the old board of directors to the new board; and obtaining an inspection of the Association's books and records. Henry and Cherewick obviously prevailed as well because at the end of the litigation they were granted summary judgment on Landowners' claims. The District Court therefore did not act arbitrarily in concluding that neither side could claim prevailing party status.

¶40 Finally, Henry's and Cherewick's arguments under § 35-2-1306, MCA, are misplaced. Even if Landowners' action constituted a derivative action, § 35-2-1306,

MCA, simply gives the court the option of awarding attorney fees and costs; the statute does not require the court to award attorney fees. Section 35-2-1306, MCA ("On termination of the derivative proceeding, the court *may* order . . . the complainant to pay any defendant's reasonable expenses, including attorney fees . . . .").

¶41 The District Court presided over this contentious, complicated case for nearly five years. The court understood the circumstances and the parties' positions well. We conclude that the District Court did not commit legal error or abuse its discretion in denying Henry's and Cherewick's motion for attorney fees.

## CONCLUSION

¶42 The District Court's judgment is affirmed in all respects.


/S/ BETH BAKER


We concur:

/S/ MIKE McGRATH
/S/ LAURIE McKINNON
/S/ MICHAEL E WHEAT
/S/ JAMES JEREMIAH SHEA