FILED

10/05/2017

*Ed Smith*
CLERK OF THE SUPREME COURT
STATE OF MONTANA

Case Number: DA 17-0214

DA 17-0214

IN THE SUPREME COURT OF THE STATE OF MONTANA

2017 MT 245

NEILL FISHMAN,

        Plaintiff and Appellant,

    v.

GRBR, INC., and DOES 1-5,

        Defendant and Appellee.

APPEAL FROM:    District Court of the Eleventh Judicial District,
                      In and For the County of Flathead, Cause No. DV 16-0481D
                      Honorable Dan Wilson, Presiding Judge

COUNSEL OF RECORD:

        For Appellant:

                John M. Wagner, Wagner Law Firm, PC, Whitefish, Montana

        For Appellee:

                Antonia P. Marra, Marra Evenson & Bell, PC, Great Falls, Montana

                              Submitted on Briefs:  September 6, 2017

                                    Decided:  October 5, 2017

Filed:

                                       Clerk

Justice Jim Rice delivered the Opinion of the Court.

¶1 Neill Fishman (Fishman) appeals the entry of summary judgment by the Eleventh Judicial District Court, Flathead County in favor of GRBR, Inc. (GRBR). We affirm, addressing the following issue:

*Did the District Court err by granting summary judgment to the defendant pursuant to the "Equine Activities Act"?*

## FACTUAL AND PROCEDURAL BACKGROUND

¶2 GRBR is a Montana corporation owned by Don Gaynor (Don) and operated by Don and his wife, Nancy Gaynor (Nancy). GRBR offered guest cabins and trail horse rides near Whitefish, Montana, providing about 1,000 trail rides per year. Fishman was a participant on a GRBR trail ride in June 2014.

¶3 Sometime before the day of the ride, Fishman called GRBR and booked a trail ride for himself and some relatives. During the call, Don asked Fishman for his height and weight to determine which horse would work best for him. Fishman stated he was over 6 feet tall and weighed 210 pounds. Based on Fishman's size, Don chose the horse, "Big," a large horse capable of carrying heavier riders, for Fishman to ride. Big's saddle and associated tack are specifically designed for him.

¶4 GRBR presented Fishman with a Supervised Equine Rental Agreement and Release Form (Agreement) prior to the trail ride. The Agreement stated that "saddle girths (fasteners around the horse's belly) may loosen during equine activity, which may cause

2

slippage of the saddle and the potential fall from the horse."[1]  Fishman read and signed the Agreement.

¶5     GRBR's standard pre-ride procedure includes saddling the horses and checking saddle cinches a minimum of three (3) times before a riding participant mounts the horse. Don saddled Big before Fishman arrived and, consistent with procedure, Big's saddle cinch was checked several times before the horse was mounted.  A wrangler rode Big before Fishman arrived and the saddle cinch was checked again.

¶6     After the participant mounts the horse, GRBR wranglers give oral instructions and observe the participant riding the horse around the corral in a safety check to address any equipment adjustments, observe how the participant manages the horse, provide instruction, and answer questions or concerns.  Participants are instructed to ask for help if they believe something is wrong.  Fishman had a low level of riding experience, and Don explained to him how to hold the reins and direct Big's movements.  Fishman then rode Big around the corral.  Nancy noticed Fishman was leaning to one side and tipping the saddle.  Nancy instructed Fishman to shift his weight and to keep the saddle centered over the horse.  Fishman complied before departing the corral for the trail.

¶7     Upon completion of the safety check, the ride participants were taken out on the trail.  Nancy, on horseback, led the riders out of the corral and down the trail at a walking pace.  During the ride, Fishman attempted to re-center the saddle by shifting back and forth

---

[1] The term "girth" may be used interchangeably with "cinch," which is defined as a girth for a saddle or pack. *Oxford Am. Dictionary* 136 (Oxford Univ. Press, Inc. 1999).

in the stirrups. Nancy became aware Fishman was having a problem when Fishman yelled at her. Nancy observed Fishman sliding to one side and then attempting to jump off the horse, landing on the ground. The saddle remained affixed on the horse, but resting on its side. Big did not buck or react during the incident.

¶8    Fishman filed this damage action against GRBR, asserting negligence generally and specifically mentioning only inaction by Nancy as the apparent assertion of breach of duty, and not referencing the actions of GRBR's other personnel: "Nancy Gaynor never physically touched or inspected Neill's saddle after it was place[d] upon his horse Big, nor after she noticed it was off center and told Neill to recenter, and at no time before or after Neill mounted Big." GRBR moved for summary judgment, arguing Fishman's accident was caused by a risk inherent in equine activities for which liability is precluded under § 27-1-727, MCA. Fishman also moved for summary judgment, arguing Nancy failed in the duty to inspect the saddle, which satisfied an exception to the liability protection of the equine statute.

¶9    Concluding there were no genuine issues of material fact, the District Court granted summary judgment to GRBR, reasoning that "among the risks inherent to equine activities is the risk that saddle girths may loosen during a ride and cause slippage of the saddle, which may result in a fall. It is out of this very type of inherent risk—of which [Fishman] was specifically warned in the Agreement and of which he acknowledged his understanding—that Fishman's negligence claim arises. . . ." The Court further concluded that Fishman had failed to establish that a statutory exception applied, reasoning that

4

"Fishman has not alleged or shown that any piece of tack or equipment broke, was otherwise defective or did not work or perform as expected." Fishman appeals.

## STANDARD OF REVIEW

¶10 We review de novo a district court's grant or denial of summary judgment, applying the same criteria of M. R. Civ. P. 56 as a district court. *Pilgeram v. GreenPoint Mortg. Funding, Inc.*, 2013 MT 354, ¶ 9, 373 Mont. 1, 313 P.3d 839. Summary judgment is appropriate when the moving party demonstrates both the absence of any genuine issues of material fact and entitlement to judgment as a matter of law. M. R. Civ. P. 56(c)(3); *Bird v. Cascade Cnty.*, 2016 MT 345, ¶ 9, 386 Mont. 69, 386 P.3d 602. We review a district court's conclusions of law to determine whether they are correct. *Pilgeram,* ¶ 9.

## DISCUSSION

¶11 *Did the District Court err by granting summary judgment to the defendant pursuant to the "Equine Activities Act"?*

¶12 Sections 27-1-725 through -727, MCA, commonly referred to as the "Equine Act" or "Equine Activities Act," states that "the policy of the state of Montana" is "that a person is not liable for damages sustained by another solely as the result of risks inherent in equine activities if those risks are or should be reasonably obvious, expected, or necessary to persons engaged in equine activities." Section 27-1-725, MCA. We have stated that the "practical effect" of the Act is to "pronounce that equine activity sponsors do not have a duty to protect participants from unavoidable risks, or the inherent risks of equine activities of which the participant is or should be aware," explaining that:

5

If the injury is due to an inherent risk of equine activities and the participant expected that risk, then the equine activity sponsor cannot have been negligent—the injury was due to an unavoidable risk of which the participant was aware, so the sponsor could not have breached any duties to warn of or eliminate the risk. Thus, so long as the participant expects a risk inherent in equine activities, pursuant to the statute, the equine activity sponsor may not be held liable for injury suffered as a result of that risk.

*McDermott v. Carie*, 2005 MT 293, ¶ 18, 329 Mont. 295, 124 P.3d 168.

¶13    The Act provides, in pertinent part:

**Equine activity liability limitations**. (1) Except as provided in subsections (2) and (3), an equine activity sponsor or an equine professional is not liable for an injury to or the death of a participant engaged in an equine activity resulting from risks inherent in equine activities.

(2) An equine participant shall act in a safe and responsible manner at all times to avoid injury to the participant and others and to be aware of risks inherent in equine activities.

Section 27-1-727(1), (2), MCA. The Act further defines the term, "risks inherent in equine activities," as "dangers or conditions that are an integral part of equine activities," and provides a non-exhaustive list of such dangers. Section 27-1-726(7), MCA.

¶14    Fishman does not contest the District Court's determination that the circumstances of his accident come within the statutory definition of "risks inherent in equine activities," and thus cannot form the basis of a liability claim under § 27-1-727(1), MCA. However, Fishman argues that the District Court erred in concluding that his claim does not fall within an exception to the general rule, as set forth in § 27-1-727(3), MCA, which states:

(3) Subsection (1) does not apply:

(a) if the equine activity sponsor or the equine professional:

6

(i) provided the equipment or tack and the equipment or tack caused the injury because the equine activity sponsor or equine professional failed to reasonably and prudently inspect or maintain the equipment;

Fishman argues that Nancy's failure to inspect the equipment and tack he was using caused the accident, and thus his claim comes within the exception stated in § 27-1-727(3)(a)(i), MCA, and permits his claim.

¶15 We first note that Fishman did not allege that the equipment or tack failed, was improperly maintained, or was otherwise defective. Further, although Fishman focuses solely on Nancy's personal actions or inaction, it is an undisputed material fact that the subject equipment and tack was repeatedly checked and inspected by the equine sponsor prior to the trail ride to insure they were working properly. Fishman makes no showing whatsoever that these inspections were not performed "reasonably and prudently," as required by § 27-1-727(3)(a)(i), MCA, for his claim. The fact that the cinch nonetheless loosened during the ride underscores that this occurrence is an inherent danger or condition of equine activity, about which Fishman was expressly advised.

¶16 The District Court also properly determined that the material facts of the case are not in dispute. Fishman argues that there were differing accounts of the communications that occurred between Nancy and Fishman in the corral before the trail ride, but these communications are not material to whether the accident was caused by an inherent risk and whether the equipment was reasonably and prudently inspected. Fishman argues that the District Court went too far by excusing liability on the basis of the Agreement he had signed, which he argues cannot, in itself, release an equine sponsor from liability. While

7

Fishman is correct that liability cannot be excused on the basis of an Agreement, *see McDermott*, ¶ 19, the District Court did not, in our view, apply the protections of the Equine Act solely on the basis of the Agreement. Rather, the District Court considered the Agreement in the context of whether Fishman was aware of the inherent risks of horseback riding. Its ultimate decision was premised upon the circumstances of this accident coming within the inherent risks of equine activity as defined in the Equine Act, and not within the statute's exception to that liability limitation.

¶17 Affirmed.

/S/ JIM RICE

We concur:

/S/ LAURIE McKINNON
/S/ BETH BAKER
/S/ DIRK M. SANDEFUR

Justice Michael E Wheat, dissenting.

¶18 I respectfully dissent from the majority. I would reverse and remand because the District Court resolved issues of disputed fact. In my opinion, the majority overlooks the dispute of material fact between Fishman and GRBR as to whether Fishman's slipping during the ride was an inherent danger or condition of equine activity, or if it was a product of improper equipment inspection.

8

¶19     GRBR knew the cinch was loose during the safety check when Fishman began to slip. GRBR attributed the slip to a shift in weight by Fishman and directed him accordingly to keep his weight centered. Fishman and other riders were then taken out on the trail. While on the trail, Fishman's saddle again slipped; this time Fishman had to jump off the horse. The majority states that "the fact that the cinch nonetheless loosened during the ride underscores that this occurrence is an inherent danger or condition of equine activity." Opinion, ¶ 15. However, this characterization of the saddle slippage erroneously ignores that the cinch was not tightened properly by GRBR prior to hitting the trail.

¶20     Further, GRBR was on notice that Fishman's cinch was loose through observations during the safety inspection and through Fishman's own communications with the trail guide. However, the majority side-stepped the safety inspection dispute by stating "Fishman makes no showing whatsoever that these inspections were not performed 'reasonably and prudently,' as required by § 27-1-727(3)(a)(i), MCA, for his claim." Opinion, ¶ 15. The majority also concludes the communications between Fishman and GRBR as "not material to whether the accident was caused by an inherent risk and whether the equipment was reasonable and prudently inspected." Opinion, ¶ 16. In my opinion, such conclusions overlook the dispute of fact as to whether the cinch was not reasonably and prudently inspected by GRBR after they observed that the cinch was loose or that the cinch became loose during the ride as a condition of equine activity. This dispute of fact should be left for a jury to resolve.

9

¶21 This Court has long adhered to the proposition that "summary judgment is an extreme remedy that should never be a substitute for a trial on the merits if a controversy exists over a material fact." *Corporate Air v. Edwards Jet Ctr. Mont. Inc.*, 2008 MT 283, ¶ 24, 345 Mont. 336, 190 P.3d 1111. The majority interprets the Equine Activities Act too narrowly and thereby deprives an injured person of the right to have the facts of their claim decided by a jury rather than by a judge's expansive interpretation of an immunity statute.

¶22 For these reasons, I dissent.

/S/ MICHAEL E WHEAT